**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA          :

                                                        CRIMINAL ACTION
                         v.                              No. 16-33-1

FILED

JUL 2 0 2016

DWAYNE JONES

LUCY V. CHIN, Interim Clerk
By _____ Dep. Clerk

July 2̲0̲, 2016                                      **Anita B. Brody, J.**

**MEMORANDUM**

Defendant Dwayne Jones is charged with one count of conspiracy to distribute

oxycodone in violation of 21 U.S.C. § 846 and multiple substantive counts of possession of

oxycodone in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), acquiring a controlled substance by

fraud in violation of 21 U.S.C. § 843(a)(3), and aiding and abetting in violation of 18 U.S.C. § 2.

Jones moves to dismiss the conspiracy charge, Count I of the indictment, on double jeopardy

grounds.  ECF No. 23.  For the reasons set forth below, I will grant the motion.

**I.      BACKGROUND**

   a.  Summary

Beginning in 2009, Keith Harris, an assistant office manager for the medical office of Dr.

James W. Shepard, M.D., engaged in an extensive scheme to steal, forge, and distribute

fraudulent prescriptions for oxycodone.  While employed at Dr. Shepard's office, Harris wrote

thousands of fraudulent prescriptions using Dr. Shepard's credentials and forged signature.

Harris distributed these fraudulent prescriptions to a number of individuals, including Dwayne

Jones.  Every fraudulent prescription obtained by Jones originated from Harris and contained Dr.

Shepard's credentials.  Upon receipt of the prescriptions from Harris, Jones passed and

redistributed them to obtain oxycodone tablets.  This conduct forms the basis of the two

1

conspiracy indictments against Jones.[1]

    b.  Jones-Dwyer Case (2015 Superseding Indictment)

      In September 2015, a federal grand jury sitting in the Eastern District of Pennsylvania returned a superseding indictment (the "2015 Superseding Indictment") charging Jones and a codefendant, Devon Dwyer (the "Jones-Dwyer" case), with one count of conspiracy to distribute oxycodone in violation of 21 U.S.C. § 846.[2] The 2015 Superseding Indictment stated that the conspiracy lasted from on or about May 8, 2009 until on or about September 26, 2011. The 2015 Superseding Indictment also charged Jones with thirty-one counts of distribution of oxycodone in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), eight counts of acquiring a controlled substance by fraud in violation of 21 U.S.C. § 843(a)(3), one count of money laundering by concealment in violation of 18 U.S.C. § 1956(a)(1), one count of money laundering for a transaction greater than $10,000 in violation of 18 U.S.C. § 1957, and aiding and abetting in violation of 18 U.S.C. § 2.[3] The 2015 Superseding Indictment identified four additional coconspirators by their initials, including "K. H.," later identified as Keith Harris. The 2015 Superseding Indictment noted that three of the four named coconspirators were "charged elsewhere." 2015 Superseding Indictment

---

[1] I asked the Government for a list of all cases involving Harris's fraudulent prescription scheme. In response, the Government produced a letter with a list of twenty-three cases involving "fraudulent prescriptions which were written by Keith Harris" by case name, number, and presiding Judge. Jones Related Cases Letter from AUSA (July 1, 2016). Because nearly all of the cases remain under seal before different judges, a redacted version of the letter, omitting the names of the defendants, is attached as Exhibit A. The Government agrees that only the names of the defendants should remain under seal. *See* Evid. Hr'g Tr. 7:9-24.

[2] On October 23, 2013, the Government indicted Devon Dwyer. Indictment, *United States v. Dwyer*, No. 13-577-1 (E.D. Pa. Oct. 23, 2013), ECF No. 1. The original indictment only charged Dwyer, solely for substantive counts of acquiring a controlled substance by fraud and aiding and abetting. *Id.* On September 23, 2015, the Government superseded the indictment against Dwyer and added charges against Jones. *See* 2015 Superseding Indictment, *United States v. Jones*, No. 13-577-2, (E.D. Pa. Sept. 23, 2015), ECF No. 31. When the Government superseded, it added a charge of conspiracy to distribute oxycodone and substantive counts of distribution of oxycodone against Dwyer. 2015 Superseding Indictment, *United States v. Dwyer*, No. 13-577-1, ECF No. 31.

[3] The 2015 Superseding Indictment included additional substantive counts of distribution of oxycodone and acquiring a controlled substance by fraud that the Government dismissed on the record at trial.

¶ 3, *United States v. Jones*, No. 13-577-2, (E.D. Pa. Sept. 23, 2015), ECF No. 31.

On March 7, 2016, I began a criminal jury trial against Jones and Dwyer on the charges in the 2015 Superseding Indictment.  At the trial, Harris and two of the other coconspirators identified by their initials in the 2015 Superseding Indictment testified on behalf of the Government.  Harris, who forged every prescription in the scheme using Dr. Shepard's name, credentials, and signature, was the Government's primary witness.

In the conspiracy charged in the 2015 Superseding Indictment in the Jones-Dwyer case, Jones obtained a total of 592 fraudulent prescriptions from Harris.  Jones then passed or helped pass the 592 fraudulent prescriptions, including over 300 prescriptions in his own name and 200 prescriptions in the names of his coconspirators.  Jones, Dwyer, and their coconspirators filled the fraudulent prescriptions at a total of fifteen different pharmacies in Philadelphia.  They visited several pharmacies per day, generally soliciting local, independent pharmacies to avoid detection and suspicion.  Through the passing of these prescriptions, the conspirators obtained 28,020 (10 milligram) tablets, 20,380 (30 milligram) tablets, and 7,110 (80 milligram) tablets of oxycodone.  The Government identified 100 of the passed prescriptions as overt acts of the conspiracy.

At the trial, Harris testified about his involvement in the scheme and explained how the scheme operated.  Harris Test. Tr. 8:18-11:16, 15:25-17:5, *United States v. Jones*, No. 13-577-2, (E.D. Pa. Mar. 8, 2016).  I learned from Harris how he wrote and forged the prescriptions before ever meeting with Jones.  Harris Test. Tr. 8:18-11:1, 18:11-15.  At some point during the scheme, Harris encouraged Jones to become a patient of Dr. Shepard to avoid suspicion and make the prescriptions easier for Harris to forge.  Harris Test. Tr. 17:6-13.

I also learned from Harris about the intricate system the conspirators used to ensure that

3

Dr. Shepard's office verified each fraudulent prescription. Harris Test. Tr. 20:6-21:5, 22:12-25:19. Harris explained that pharmacists often called the doctor's office to verify the prescriptions before filling them because the prescriptions were for controlled substances. Harris Test. Tr. 20:17-23, 22:12-23:5. Harris and two of his coworkers, Latrice Booker and Charin Sturgis, were alerted when a member of the scheme went to fill a prescription. Harris Test. Tr. 20:17-21:18, 22:12-25:11. When a pharmacist called the office to verify the prescription, Harris, Booker, or Sturgis confirmed that the prescription was valid, allowing the fraudulent prescriptions to be filled for oxycodone tablets. *Id.* Although they were additional coconspirators, Sturgis and Booker were not named in the 2015 Superseding Indictment.[4]

On March 17, 2016, after an eight-day trial, the jury returned a guilty verdict against Jones on all charges.

c. Jones-Shuford Case (2016 Indictment)

On February 3, 2016, before the trial in the Jones-Dwyer case began, the same Assistant United States Attorney ("AUSA") procured a second, sealed indictment (the "2016 Indictment") against Jones from a grand jury sitting in the Eastern District of Pennsylvania. The 2016 Indictment again charged Jones, this time with Shaun Shuford as codefendant (the "Jones-Shuford" case), with one count of conspiracy to distribute oxycodone in violation of 21 U.S.C. § 846. According to the 2016 Indictment, this second conspiracy operated from on or about March 26, 2010 until on or about November 16, 2011. The 2016 Indictment also charged Jones with thirty-four counts of possession of oxycodone with intent to distribute in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), thirty-four counts of acquiring a controlled substance by fraud in violation

---

[4] Neither Charin Sturgis nor Latrice Booker testified at the Jones-Dwyer trial. However, Harris identified them from their photographs by name in open court and discussed their roles in the scheme during his testimony. *See* Harris Test. Tr. 23:11-24:25, 42:24-43:6, *United States v. Jones*, No. 13-577-2, (E.D. Pa. Mar. 8, 2016). The Government also referenced Sturgis and Booker throughout the trial, and chose to display their photographs in a demonstrative exhibit that depicted the general hierarchy of the scheme.

of 21 U.S.C. § 843(a)(3), and aiding and abetting in violation of 18 U.S.C. § 2. The 2016

Indictment identified four additional coconspirators by their initials who "conspired and

agreed . . . to knowingly and intentionally distribute oxycodone." 2016 Indictment ¶ 3, *United*

*States v. Jones*, No. 16-33-1, (E.D. Pa. Feb. 3, 2016), ECF No. 1. Each of the additional

coconspirators in the 2016 Indictment is "charged elsewhere." *Id.* ¶ 3. One of the named

coconspirators in the 2016 Indictment is Keith Harris.[5]

According to the 2016 Indictment, Jones again "obtained fraudulent prescriptions for

oxycodone from K. H." 2016 Indictment ¶ 4. He then "provided the fraudulent prescriptions for

oxycodone to defendant Shaun Shuford, for redistribution." *Id.* ¶ 5. Shuford then recruited

additional coconspirators to fill the fraudulent prescriptions at seventeen different pharmacies in

the greater Philadelphia area, using a number of aliases and forged driver's licenses. Fifteen of

the pharmacies were located in Philadelphia, and two of the pharmacies were located right

outside of Philadelphia, in Montgomery County. According to the 2016 Indictment, Jones and

Shuford passed or helped pass a total of 300 fraudulent prescriptions during the conspiracy.

Through the passing of these prescriptions, Jones and Shuford obtained 9,180 (10 milligram)

tablets, 21,900 (30 milligram) tablets, and 1,440 (80 milligram) tablets of oxycodone. The 2016

Indictment identifies eighty-four of the passed prescriptions as overt acts of the conspiracy.

On March 17, 2016, the same AUSA unsealed the 2016 Indictment in the Jones-Shuford

case. *See* Letter from AUSA Unsealing Indictment/Information as to Dwayne Jones, Shaun

Shuford (March 17, 2016), *United States v. Jones*, No. 16-33-1, ECF No. 17. Jones now moves

to dismiss the conspiracy charge against him in the Jones-Shuford case, Count I of the 2016

Indictment. Jones argues that the conspiracy to distribute oxycodone charge in the 2016

---

[5] Although Keith Harris is only identified as a coconspirator by his initials, "K. H.," in both indictments, the Government concedes that Keith Harris is a named coconspirator in both cases. *See, e.g.*, Gov't's Resp. Opp'n. Def. Dwayne Jones's Mot. Dismiss 4, *United States v. Jones*, No. 16-33-1, ECF No. 35.

Indictment relies upon the same conduct that formed the basis of his prior charge and conviction for conspiracy to distribute oxycodone in the Jones-Dwyer case, in violation of his Fifth Amendment right against double jeopardy.

## II.    DISCUSSION

The conspiracies charged in the Jones-Dwyer case and the Jones-Shuford case are similar in time, place, conduct, and personnel. Both involve a conspiracy to distribute the same drug, by the same major players, using the same modus operandi to achieve a single conspiratorial objective. These shared attributes strongly support the conclusion that Jones participated in a single, continuing conspiracy to distribute oxycodone through passing and distributing fraudulent prescriptions. The Government had the burden to prove separate conspiracies by a preponderance of the evidence, and it has not met its burden.

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Double Jeopardy Clause "prohibits [the government] from splitting one conspiracy into several prosecutions." *United States v. Becker*, 892 F.2d 265, 268 (3d Cir. 1989). As a result, "a single conspiracy should not be divided into multiple prosecutions, each alleging different overt acts." *United States v. Rigas*, 605 F.3d 194, 212 (3d Cir. 2010). "The key is whether the multiple crimes charged were the same 'in law and in fact.'" *United States v. Travillion*, 759 F.3d 281, 294-95 (3d Cir. 2014) (citation omitted).

Courts apply the totality-of-the-circumstances test to double jeopardy claims involving successive conspiracy indictments "to determine whether the Government impermissibly split a single conspiracy into multiple conspiracies." *Rigas*, 605 F.3d at 212. The focus of the inquiry is "whether two groups of conspirators alleged by the government to have entered separate

6

agreements are actually all committed to the same set of *objectives* in a single conspiracy."

*Travillion*, 759 F.3d at 295 (citation omitted).

> When applying the totality-of-the-circumstances test, a court considers whether:
>
> (a) the 'locus criminis' of the two alleged conspiracies is the same; (b) there is a significant degree of temporal overlap between the two conspiracies charged; (c) there is an overlap of personnel between the two conspiracies (including unindicted as well as indicted coconspirators); and (d) the overt acts charged and the role played by the defendant according to the two indictments are similar.

*United States v. Liotard*, 817 F.2d 1074, 1078 (3d Cir. 1987) (citations omitted).  These factors

are not to be applied rigidly, because "different conspiracies may warrant emphasizing different

factors." *United States v. Smith*, 82 F.3d 1261, 1267 (3d Cir. 1996).

Turning to Jones's motion, I must now apply the totality-of-the-circumstances test to

Jones's two successive indictments for conspiracy to distribute oxycodone in violation of 21

U.S.C. § 846.

a. <u>Prima Facie Case</u>

The "defendant bears the initial burden of presenting evidence to put his double jeopardy

claim at issue." *Rigas*, 605 F.3d at 204.  "If the defendant makes a non-frivolous showing of

double jeopardy, he is entitled to a pre-trial evidentiary hearing to determine the merits of his

claim." *Liotard*, 817 F.2d at 1077.  "The defendant need only be able to identify alleged facts

and other evidence which, if credited, gives reason to believe that any alleged conspiratorial

activity was in furtherance of a single conspiracy." *Smith*, 82 F.3d at 1273.

On May 23, 2016, I issued an order requiring the parties to appear for an evidentiary

hearing on Jones's motion.  May 23, 2016 Order, *United States v. Jones*, No. 16-33-1, ECF No.

38.  In the Order, I found that Jones was entitled to a pre-trial evidentiary hearing to determine

the merits of his double jeopardy claim because he had "made a non-frivolous showing that the

'place, time, people, actions, and responsibilities are similar.'" *Id.* at n.1 (quoting *Rigas*, 605 F.3d at 213).

    b. Evidentiary Hearing

    If the defendant makes a non-frivolous showing, "the burden of persuasion shifts to the government to prove by a preponderance of the evidence that the two indictments charge the defendant with legally separate crimes." *Liotard*, 817 F.2d at 1077.

    On July 11, 2016, the parties appeared before me for an evidentiary hearing. Neither party presented witness testimony. Both parties agreed to the admission of the Jones-Dwyer trial record and exhibits into evidence. In addition, a redacted version of a letter the Government sent to the Court that lists every case "involving fraudulent prescriptions which were written by Keith Harris" by case name, number, and presiding judge, was admitted into evidence. Jones Related Cases Letter from AUSA (July 1, 2016), Ex. A. Despite its burden, the Government chose to rest its case on the Jones-Dwyer trial record and the two indictments.[6]

    Upon consideration of the evidence admitted at the July 11, 2016 hearing, I now apply the totality-of-the-circumstances test, *see Liotard*, 817 F.2d at 1078, and make the following findings:

---

[6] At the beginning of the July 11, 2016 evidentiary hearing, I invited the Government to present evidence. Evid. Hr'g Tr. 5:3-10. The Government responded, "Well, Your Honor, respectfully, I would present evidence in the form of the trial that the Court has heard as well as the indictments." *Id.* at 5:11-13. The trial record, exhibits, and two indictments were admitted into evidence. *Id.* at 4:17-5:2. I asked the Government, "[I]s there any other evidence that you wish to present to me?" *Id.* at 6:8. No other evidence was presented. I then admitted the July 1, 2016 Jones Related Cases Letter, with the names of the defendants redacted. *Id.* at 7:9-24; *see* Jones Related Cases Letter from AUSA (July 1, 2016), Ex. A. The Government proceeded to oral argument. Jones then presented his argument, and the Government responded. As the Government was concluding its response, I adjourned the hearing for a brief recess. *See* Evid. Hr'g Tr. 26:16-25. After the recess, the Government presented additional argument and then requested to re-open the presentation of evidence and call the case agent to the stand. *Id.* at 27:13-18 ("I know I wasn't going to do it previously, I was just going to argue . . ."). Jones objected. *Id.* at 28:3-21. The case agent had testified at length during the Jones-Dwyer trial. The trial record and exhibits were already admitted into evidence. After hearing from the Government and considering Jones's objection, I exercised my discretion not to re-open the presentation of evidence. *Id.* at 28:20-31:7.

i.   *"Locus Criminis"*

"Locus criminis" is "defined very simply as the 'locality of a crime; the place where a crime was committed.'" *Smith*, 82 F.3d at 1268 (citation omitted). Both the 2015 Superseding Indictment and the 2016 Indictment identify the location of the conspiracies as the Eastern District of Pennsylvania. In addition, both indictments identify pharmacies in and around Philadelphia as the location where the conspirators passed the fraudulent prescriptions, and three of the pharmacies overlap. Thus, the locus criminis of both conspiracies is the Eastern District of Pennsylvania. *See, e.g.*, *Travillion*, 759 F.3d at 295-96 (finding the location of both conspiracies to be the Western District of Pennsylvania).

ii.   *Temporal Overlap*

There is significant temporal overlap between the two conspiracy indictments. The conspiracy in the Jones-Dwyer case spanned from May 8, 2009 to September 26, 2011. The 2016 Indictment alleges that the Jones-Shuford conspiracy spanned from March 26, 2010 to November 16, 2011. Although the Jones-Dwyer conspiracy existed for approximately ten months before the Jones-Shuford conspiracy, the duration of the Jones-Shuford conspiracy is almost entirely subsumed within the duration of the Jones-Dwyer conspiracy. *See Liotard*, 817 F.2d at 1079 (finding temporal overlap where the period of the second alleged conspiracy was "entirely subsumed" within the period of the first charged conspiracy). Further, all but two of the eighty-four overt acts specified in the 2016 Indictment in the Jones-Shuford conspiracy occurred during the nineteen month overlap with the Jones-Dwyer conspiracy. This suggests that the key months of the Jones-Shuford conspiracy occurred during the existence of the Jones-Dwyer conspiracy. *See Rigas*, 605 F.3d at 215 (finding that while the second indictment covered a wider time span than the first indictment, "the key years in both conspiracies are the same").

Thus, extensive temporal overlap is apparent from the two indictments.

     *iii.*    *Overlap of Personnel*

       The overlap of personnel factor is "useful to a double jeopardy analysis to the extent that it helps determine whether the alleged conspirators in both indictments were committed to the same objectives and consequently were members of a single conspiracy." *Smith*, 82 F.3d at 1269. Consideration of personnel includes both unindicted as well as indicted coconspirators. *Liotard*, 817 F.2d at 1078. An overlap of personnel "can help decide the relevant objectives of each conspiracy." *Travillion*, 759 F.3d at 296. The Third Circuit has found an overlap of personnel when the same individuals are the "main actors" central to both indictments. *See, e.g.*, *Rigas*, 605 F.3d at 215. When the evidence suggests that the conspiratorial activities in each case are interdependent or mutually supportive to any degree and that the common participants predominate, the overlap of personnel factor weighs in favor of the existence of a single conspiracy. *See Smith*, 82 F.3d at 1269. Thus, when evaluating the significance of common participants, the inquiry is whether "*they had the same objectives.*" *Travillion*, 759 F.3d at 296.

       Both the Jones-Dwyer and the Jones-Shuford cases involve forged prescriptions written by Harris, that contain Dr. Shepard's identifying information, and that were obtained by Jones for filling and redistribution. Further, both conspiracies appear to have relied on Harris, Sturgis, and Booker to verify the fraudulent prescriptions. Although neither indictment discusses the system that Harris developed to verify the fraudulent prescriptions, Harris testified about it at length during the trial in the Jones-Dwyer case. Harris's testimony described the verification process in general terms. He explained that he was alerted when a fraudulent prescription was filled, and that he, Sturgis, and Booker verified the prescriptions to pharmacists over the phone. Like the fraudulent prescriptions at issue in the Jones-Dwyer case, the fraudulent prescriptions in

the Jones-Shuford case originated from Harris and depended on Dr. Shepard's credentials and information. This similarity creates a compelling inference that the Jones-Shuford conspiracy employed the same verification system. Without any evidence to the contrary, it is logical to infer that Harris, Sturgis, and Booker were all similarly engaged in the prescription verification system for the prescriptions at issue in the Jones-Shuford case. *See United States v. Felton*, 753 F.2d 276, 280-81 (3d Cir. 1985) (inferring that one conspiracy existed even though "the issue is not free from doubt," because "the government had the burden of proving the separate conspiracies by a preponderance of the evidence" and, "[h]aving elected to put in a thin case to prove separate conspiracies, the government bore the risk of failing to meet its burden"). Therefore, both conspiracies involved Jones, Harris, Sturgis, Booker, and Dr. Shepard.[7]

Moreover, Jones, Harris, Sturgis, Booker, and Dr. Shepard each played the same role in both conspiracies. In both cases, Harris was the source of the fraudulent prescriptions and the person orchestrating the verification of the fraudulent prescriptions with Sturgis and Booker. Harris was not a mere facilitator, but a central figure.[8] He not only stole thousands of

---

[7] Dr. Shepard is not named in either indictment, and the Government has not charged him in connection to his involvement in Harris's scheme. Although Dr. Shepard is not technically a coconspirator, he was an unintentional facilitator of the scheme: his prescription pads were necessary to the success of the conspiracy, and his office was the central location for the criminal activity associated with the forged prescriptions. But for Dr. Shepard's prescription pads, identifying information, and office, Harris would not have been able to create, distribute, or verify the fraudulent prescriptions at issue in both cases. Thus, for the purposes of the overlap of personnel analysis, Dr. Shepard's identical role in both cases is relevant.

[8] The Government argues that Harris was merely a "facilitator" rather than the leader of the scheme, rendering his common participation in the two cases immaterial. However, the Government has, in various proceedings on the record in open court, described Harris as the leader and the supplier of the "overall conspiracy" and agreed that Harris was the "kingpin." Sentencing Tr. 11:8-9, 9:10-19, *United States v. Dwyer*, No. 13-577-1 (E.D. Pa. June 29, 2016). During its argument on this very motion, the Government referred to Harris repeatedly as the "supplier" of the drugs, and only later in the proceedings tried to characterize him as a "facilitator." *See, e.g.*, Evid. Hr'g Tr. 10:20, 11:1, 14:3-5, 14:15-17, 16:20-22, *United States v. Jones*, No. 16-33-1 (E.D. Pa. July 11, 2016) (describing Harris as the supplier); *id.* at 29:12 (referring to Harris as a facilitator); *see also id.* at 29:12-14 ("I was using the term 'supplier,' but the agent would state that Keith Harris was the facilitator of numerous conspiracies. That he . . . supplied the fraudulent prescriptions to Dwayne Jones.").
[FOOTNOTE 8 REDACTED.   FOR ENTIRE FOOTNOTE, *SEE* EXHIBIT B, FILED UNDER SEAL]

prescriptions from Dr. Shepard, but he singlehandedly created every fraudulent prescription involved in the scheme and orchestrated the prescription verification system that ensured that the pharmacists would fill the fraudulent prescriptions. In essence, Harris was the source and supplier of the oxycodone. But for Harris, Jones and his coconspirators would not have been able to obtain any of the oxycodone tablets at issue in either indictment. It is readily apparent that Harris was essential to the success of both conspiracy indictments; his common role in furtherance of the same conspiratorial objective strongly favors the existence of a single conspiracy.

Similarly, in both cases, the fraudulent prescriptions were written in Dr. Shepard's name, on his prescription pads, using his credentials and forged signature. Both cases relied on access to his office to verify the prescriptions to pharmacists. Jones is the only conspirator alleged to have received prescriptions from Harris in both cases. Thus, every single fraudulent prescription that was ultimately passed in exchange for tablets of oxycodone emanated from Dr. Shepard's office, through Harris, and on to Jones.

The Government admits that Harris and Jones were common participants in both cases, but argues that two conspiracies existed because the additional coconspirators in each indictment do not overlap.[9] The Government's argument is unpersuasive. These additional coconspirators—with the exception of Shuford—were "script runners," the individuals that physically filled the fraudulent prescriptions at the pharmacies. Unlike Harris, Booker, and



[9] The full scope of the scheme and the true extent of participant overlap are not readily discernable. As was revealed during the Jones-Dwyer trial, for example, additional coconspirators, such as Booker and Sturgis, were not named in the indictments but were still integral participants in both conspiracies.

Sturgis, the script runners were minor players, and were not involved in creating or verifying the prescriptions. Even Shuford, who the Government alleges was in charge of the "script runners" identified in the 2016 Indictment, obtained all of the fraudulent prescriptions from Jones and does not appear to have had any direct connection to Dr. Shepard's office beyond his contact with Jones.

Thus, the "main actors" central to both cases overlap. *Rigas*, 605 F.3d at 215. The overlap of Harris, Jones, Sturgis, Booker, and Shepard strongly supports the inference that the conspirators in both cases were "committed to the same objectives" and therefore engaged in a single, continuing conspiracy to distribute oxycodone. *Smith*, 82 F.3d at 1269.

### iv.    Similarity of Relevant Activities

Because a drug conspiracy charged in violation of 21 U.S.C. § 846 does not require overt acts, *Travillion*, 759 F.3d at 297, the "similarity of overt acts" factor instead requires a court to examine the "full scope of activities described and implied" in the two conspiracy charges, *Smith*, 82 F.3d at 1268. The analysis focuses on "whether to infer only one conspiracy from the relevant activities of those involved." *Travillion*, 759 F.3d at 297. Multiple transactions may establish a single conspiracy where such transactions constitute a regular pattern of activity to accomplish a single objective. *See id.* at 297-98; *Felton*, 753 F.2d at 280.

In *United States v. Felton*, 753 F.2d 276 (3d Cir. 1985), the Third Circuit applied the totality-of-the-circumstances test to determine whether the defendant's two indictments, for conspiracy to possess with intent to distribute marijuana and conspiracy to distribute marijuana—one in Florida, and one in Pennsylvania—constituted double jeopardy. Both indictments alleged that the conspirators operated a marijuana smuggling ring based in Atlanta, Georgia that obtained marijuana in Colombia and transported it by plane back to Atlanta for

13

redistribution. *Id.* at 280. The two indictments differed because they specified different flights, covered a slightly different time period, and lacked a complete overlap of participants. *Id.* at 279. The Third Circuit inferred a single, ongoing conspiracy to smuggle marijuana because the flights in both indictments originated from the same place and involved the same group of people engaged in similar roles. *Id.* at 279-80. Noting that the Government had failed to provide evidence to the contrary, the Court inferred that the drugs in both conspiracies originated from the same source. *Id.* at 280. Based on the "personnel and operational similarities," *id.* at 280, the Court concluded that a "continuing, albeit loosely organized, conspiracy" existed, *id.* at 279.

The Third Circuit's analysis in *Felton* compels the conclusion that the conspiracy charge in the Jones-Shuford case violates the Double Jeopardy Clause of the Fifth Amendment. Both indictments charge Jones with conspiracy to distribute oxycodone in violation of 21 U.S.C. § 846. In both cases, the source of the fraudulent prescriptions and modus operandi employed to obtain the oxycodone tablets is identical: Harris wrote forged prescriptions on Dr. Shepard's stolen prescription pads and included Dr. Shepard's credentials and forged signature. Harris then provided the fraudulent prescriptions to Jones, who either filled the prescriptions in his own name or delivered them to his coconspirators. When Jones and his coconspirators went to fill the prescriptions, Harris, Sturgis, and Booker verified that the prescriptions were valid to the pharmacists. As was the case in *Felton*, the "logistical similarities" between the two indictments strongly supports the inference that Jones was engaged in a single, continuing conspiracy to distribute oxycodone.

The Government argues that Jones's role in each case was different because in the Jones-Shuford case, Jones provided all of the fraudulent prescriptions to Shuford, whereas in the Jones-Dwyer case, Jones distributed the prescriptions to the "script runners" or passed the prescriptions

14

himself. This is a distinction without a difference.[10] Both indictments attribute every filled prescription and tablet of oxycodone obtained during the conspiracies to Jones, regardless of whether he passed the prescription himself or provided it to another coconspirator. In both cases, Jones was the key link between Harris's fraudulent prescriptions and verification system and the additional coconspirators.

The Government declined to present evidence at the evidentiary hearing, and instead chose to rely on the indictments and the trial record from the Jones-Dwyer case. It has failed to meet its burden to establish that Jones's involvement differed materially between the two conspiracies. *See Felton*, 753 F.2d at 281. "Having elected to put in a thin case to prove separate conspiracies, the government bore the risk of failing to meet its burden." *Id.* There is nothing in the two indictments or the trial record to suggest that the Jones's role or the relevant activities in the two cases differed materially.

## III.   CONCLUSION

Because of a violation of the Double Jeopardy Clause, Jones now faces a successive conspiracy indictment by the same prosecutor, for a violation of the same statute, involving the same exact drug obtained through the same means, in the same district court where, a few

---

[10]      [FOOTNOTE 10 REDACTED.   FOR FOOTNOTE, *SEE* EXHIBIT B, FILED UNDER SEAL]



months prior, he was tried and convicted of the same offense.  Therefore, Jones's motion will be granted, and Jones's conspiracy charge in the Jones-Shuford case, Count I of the 2016 Indictment, will be dismissed.

ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:            Copies **MAILED** on _____ to:

FILED

JUL 2 0 2016

LUCY V. CHIN, Interim Clerk
By _____ Dep. Clerk

# EXHIBIT A



**U.S. Department of Justice**

*United States Attorney*

*Eastern District of Pennsylvania*

---

*Randall P. Hsia*
*Direct Dial  (215) 861-8204*
*Facsimile  (215) 861- 8618*
*E-mail Address  randall.hsia@usdoj.gov*

*615 Chestnut Street*
*Suite 1250*
*Philadelphia, Pennsylvania 19106-4476*
*(215) 861-8200*

July 1, 2016

Honorable Anita B. Brody
Senior Judge, United States District Court
7613 United States Courthouse
601 Market Street
Philadelphia, PA 19106-1744

>        *Re:     United States v. Dwayne Jones*, Crim. No. 13-577

Dear Judge Brody:

On June 29, 2016, the Court directed the government to provide a list of all cases involving fraudulent prescriptions which were written by Keith Harris. For each case, I have provided the case name, criminal number, and assigned judge. As this is an ongoing investigation, a number of the cases remain under seal.

#### A.     Active cases

1.    U. S. v.            , Crim. No. 12-575, J. Savage (Sealed)
2.    U. S. v.            , Crim. No. 13-415, J. Quinones (Sealed)
3.    U. S. v.            , Crim. No. 13-503, J. Slomsky (Sealed)
4.    U. S. v.            , Crim. No. 13-520, J. Pratter (Sealed)
5.    U. S. v.            , Crim. No. 13-521, J. Savage (Sealed)
6.    U. S. v.            , Crim. No. 13-527, J. Quinones (Sealed)
7.    U. S. v.            , Crim. No. 13-577, J. Brody
8.    U. S. v.            , Crim. No. 13-579, J. Goldberg (Sealed, to be transferred to J. Brody)
9.    U. S. v.            , Crim. No. 14-529, J. Pratter (Sealed)
10.   U. S. v.            , Crim. No. 15-573, J. Tucker (Sealed, to be transferred to J. Brody)
11.   U. S. v.            , Crim. No. 16-33, J. Brody
12.   U. S. v.            , Crim. No. 16-154, J. Pratter (Sealed)
13.   U. S. v.            , Crim. No. 16-156, J. Pratter (Sealed)
14.   U. S. v.            , Crim. No. 16-157, J. Pratter (Sealed)

#### B.     Disposed cases

1.    U. S. v.            , Crim. No. 12-479, J. Dalzell
2.    U. S. v.            , Crim. No. 12-554, J. Schiller
3.    U. S. v.            , Crim. No. 12-555, J. Slomsky
4.    U. S. v.            , Crim. No. 12-556, J. Jones

5.    U. S. v. ████████████, Crim. No. 12-557, J. Pratter

**C.    Cases to be dismissed**

1.    U. S. v. ████████████, Crim. No. 13-522, J. McLaughlin (Sealed, defendant deceased)
2.    U. S. v. ████████████, Crim. No. 13-526, J. McLaughlin (Sealed, defendant deceased)
3.    U. S. v. ████████████, Crim. No. 13-561, J. McLaughlin (Sealed)
4.    U. S. v. ████████████, Crim No. 13-576, J. Slomsky (Sealed, defendant deceased)


        Should Your Honor have any questions or concerns, the government stands ready to address them.


        Respectfully yours,

        ZANE DAVID MEMEGER
        United States Attorney


        /s   Randall P. Hsia
        RANDALL P. HSIA
        Assistant United States Attorney